UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILMINGTON TRUST, N.A., | Case No. 18-CV-3299 (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| GREGORY NELSON, | |
| Defendant. | |

Christopher C. Coss, COSS & MOMJIAN, LLP; JoLynn M. Markison and Lillian Terese Dobson, DORSEY & WHITNEY LLP, for plaintiff.

David H. Redden and John A. Fabian, III, FABIAN MAY & ANDERSON, PLLP, for defendant.

Defendant Gregory Nelson used to work as a Client Development Officer for plaintiff Wilmington Trust, N.A. In November 2018, Nelson left Wilmington Trust to join SRS Acquiom ("SRS"), one of Wilmington Trust's competitors. Wilmington Trust responded to Nelson's departure by suing him, alleging that, while he was still employed by Wilmington Trust, Nelson breached his contractual obligations, committed fraud, violated his duty of loyalty, and misappropriated Wilmington Trust's trade secrets. ECF No. 1. Wilmington Trust also alleges that, after Nelson left its employ, he solicited clients, solicited employees, and misused confidential information—all in violation of various restrictive covenants in his employment

agreements. To prevent any future violations of those covenants, Wilmington Trust now seeks a preliminary injunction. ECF No. 8.[1]

The Court held a hearing on Wilmington Trust's motion on December 20, 2018. The Court has reviewed the record and considered the arguments made in the parties' briefs and at the hearing. For the reasons explained at the hearing and summarized below, Wilmington Trust's motion is denied.[2]

The Court must consider four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the harm that granting the injunction will inflict on the other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Preliminary injunctions are extraordinary remedies, and the party seeking such relief bears the burden of establishing its entitlement to an injunction under all of the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

---

[1]Wilmington Trust's motion is styled as a motion for a temporary restraining order. The Court treats Wilmington Trust's motion as one for a preliminary injunction, however, because Nelson received notice of the motion, both sides have had a full opportunity to submit briefs and supporting materials, and the Court held oral argument on Wilmington Trust's motion. *See* Fed. R. Civ. P. 65; *see also Honeywell Int'l Inc. v. Stacey*, No. 13-CV-3056 (PJS/JJK), 2013 WL 9851104 (D. Minn. Dec. 11, 2013).

[2]Wilmington Trust also moved for expedited discovery. ECF No. 8 at 2. The Court has referred that motion to Magistrate Judge David T. Schultz.

The Court believes that it is possible—perhaps even likely—that Wilmington Trust will succeed in showing that Nelson violated the duty of loyalty. But the evidence submitted by Wilmington Trust supports only its claims involving Nelson's *past* conduct—that is, its claims regarding allegedly unlawful acts that Nelson committed while still working for Wilmington Trust. Wilmington Trust has submitted virtually no evidence that Nelson has violated any contractual or other duty since leaving its employ.

Wilmington Trust says that Nelson is impermissibly soliciting Wilmington Trust's clients. There is no evidence that this is true, however. Wilmington Trust cites a meeting that Nelson had with a law firm that *refers* clients to Wilmington Trust, but that law firm is not a client, and there is no evidence that, in the course of the meeting, Nelson did or said anything that violated a restrictive covenant. Wilmington Trust also says that Nelson is impermissibly soliciting its employees to join SRS. Again, though, there is no evidence that this is true. Wilmington Trust points to a single text message sent by an SRS employee (Ken Newcomer) to a Wilmington Trust employee (Brandon Horak). But there is no evidence that Nelson requested, encouraged, or even knew about this text message, and this text message—which reads, in its entirety, "Coffee? Ken"—does not rise to the level of solicitation. ECF No. 15 at 2. Finally, Wilmington Trust says that Nelson is using its trade secrets and confidential information. This

allegation, like the others, is not supported by any evidence. Although Nelson possessed confidential information while he was employed by Wilmington Trust, Nelson swears that he destroyed or returned all of this information and swears that he no longer has access to any confidential information. ECF No. 24 at 2-3, 23-25. Wilmington Trust has submitted no evidence that Nelson is lying.

At bottom, Wilmington is arguing that Nelson engaged in devious behavior while still in its employ, and thus he is a devious guy, and thus he is likely to continue to engage in devious behavior. But without any evidence that Nelson has done anything unlawful since joining SRS—or that Nelson is planning or threatening to do anything unlawful in the future—Wilmington Trust cannot show that it will suffer irreparable harm absent injunctive relief. An injunction will not issue in the absence of evidence showing that irreparable harm is "certain" and "of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted).[3] The Court will not grant an injunction

---

[3]In support of its argument for an injunction, Wilmington Trust refers to Minn. Stat. § 325C.02, which authorizes courts to enjoin "[a]ctual or threatened" misappropriation of trade secrets. But, as already noted, Wilmington Trust has provided no evidence that Nelson currently possesses trade secrets. *See Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 959 (D. Minn. 1999) (refusing to issue injunction when there was "little evidence that [the defendant] . . . possesses confidential Lexis-Nexis information, apart from what he might retain in his memory"). Moreover, Wilmington Trust cannot show a sufficient threat of harm even *if* Nelson did possess trade secrets. "[W]here the misappropriation is merely threatened, the moving party must

(continued...)

"simply to eliminate a possibility of a remote future injury" or to "allay [a company's] fears and anxieties about [a former employee] working for [a competitor]." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 873 (D. Minn. 2015) (cleaned up). And any injury caused by Nelson while he was still employed by Wilmington Trust "can be addressed through an award of damages" rather than through an injunction "because the harm . . . has already occurred." *CDI Energy Servs. v. West River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (affirming the district court's refusal to grant an injunction where it was "not entirely clear how injunctive relief would actually assist" the plaintiff because the wrongful conduct had already occurred).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion for a preliminary injunction [ECF No. 8] is DENIED.

---

[3](...continued)
demonstrate a high degree of probability of inevitable disclosure." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 869 (D. Minn. 2015) (cleaned up). "This is a heavy burden," *id.*, and "[m]erely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction." *Int'l Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992). Wilmington Trust has failed to clear this high hurdle.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December 28, 2018                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge